Spear, J.
It is not claimed in this case that the defendant’s assiguor, the lumber company, had, by virtue of its claim against the contractor, any lien upon the premises; nor is it denied that the plaintiff' had complied with the law entitling him to recover against the defendant, and to a lien. The only question is as to the right of set-off in favor of the defendant and against the plaintiff. The proposition may be stated thus: Can the owner of premises, having knowledge that a mechanic has performed work upon a building thereon, under employment of the principal contractor, set off against a claim for work, so done, a claim against such contractor, not arising out of the contract under which the building is constructed, or in any way having relation thereto, and acquired by such owner after the labor was performed by the mechanic, but before the owner had notice that the mechanic had not been paid ?
*423 The question is to be determined by a consideration of the several sections of our statute relating to mechanics’ liens. Without quoting at length from these sections, their effect, so far as they apply to the question here, may be stated. Sections 3184-3192, Revised Statutes, provide for the taking of a lien upon the premises by the contractor. Section 3193, and following, give the right to a lien to any sub-contractor, laborer, or mechanic, who, under employment of the head contractor, performs labor or furnishes material for the improvement, and who has not been paid. He may file with the owner a sworn and itemized account of the amount and value of the labor or material, with all credits and set-offs, and upon receiving such notice the owner shall detain in his hands all subsequent payments from the principal contractor upon the contract in an amount, sufficient to satisfy the claim. Within five days after receiving such account the owner is required to notify the contractor, and if within five days thereafter he does not notify the owner of his intention to dispute or commence an action to adjust the account, he is deemed to assent to its correctness, and thereupon such subsequent payment shall be applied by such owner to the account. If the contractor neglect to pay within five days after such assent to the correctness of the account, the owner shall pay, when due, the whole, or, in case other claims have been filed, a pro rata amount, as the case may be, out of subsequent payments owing to the contractor, and on his failure for ten days, the sub-contractor, workman, or material-man may recover against the owner in an action for money had and received, when' due, the whole, or a pro rata amount, as the case may be, not exceeding in any case the balance due to the principal contractor.
In addition to this remedy, the workman or material-man, by complying with subsequent provisions, may have a lien upon the premises which shall date back from the date of performing the first item of labor, or of the first material furnished, which shall have the same operation, effect, and duration, and be subject to the same obligations *424 with respect to the owner, as the lien of the head-contractor in similar cases. Such lien shall take precedence over and lien already taken or to be taken by the contractor, and an 'assignment or transfer by such contractor of his contract with the owner, as well as proceedings in attachment, or otherwise, against such contractor, to subject or incumber his interest in such contract, shall save and be subject to the claim of every laborer, mechanic, or material-man who has furnished labor or material toward the erection or repair of the structure.
The 'statute is highly remedial in its character, and should receive such liberal construction as will carry out the purpose of the legislature in its enactment. The labbr of the workman and the material of the material-man having contributed to the erection of the structure; having, indeed, created, in part the very property on which the lien is sought to be attached, che purpose of the law is to give to such parties the right, where the contractor refuses to pay, to be paid for their labor and material out of the fund which has been earned under the contract, and out of the structure, and the land upon which it stands, such claim, as to amount, not to be in excess of the claim of the contractor as measured alone by the contract and his performance of it.
In giving a construction to this statute, by fair inference it may be assumed that the rights of the workman and material-man, as against the owner, are based upon the latter’s contract with the contractor, and while they are subordinate to the contract, and are to be worked out through it, those parties have the right to rest in security upon it and the means provided by law to secure its application to their demands. In the absence of fraud they are presumed to have notice of the terms of the original contract. Hence, if the original contract showed that pay-' ment had been made in advance to the contractor, or if it contemplated the allowance, by the contractor, of set-off theu held or to be acquired by the owner as payment, such provisions would bind the workmen and material-men, as they would be held to have accepted employment of the *425 contractor with an implied assent to such terms. But, where the contract was silent as to advance payments, and as to claims of the owner against the contractor, the Avorkmen and material-men could not be held to have accepted employment with a vie\v to such contingencies.
The purpose of laAvs of this character is, .as stated by Phillips, in his work on Mechanic’s Liens, “ to take from the owner money actually owing by him upon his contract and apply it in payment for the labor and material which the Avorkmen and material-men have contributed tOAvard the performance of the same contract.” And, where it is provided, as in our statute, that an assignment or transfer by the contractor of his contract with the owner shall save and be subject to the claims of the workmen and material-men who have furnished labor or material toAvard the construction of the improvement, such provisions operate as an equitable transfer to the workmen and material-men of the money due to the contractor by the owner, subject only to such obligations as spring out of.the contract itself. This construction is believed to be founded in reason and to be supported by the holdings of courts in other states upon the subject. The amount owing to the contractor under the contract being thus found to be transferred to the AAorkmen and material-men, it would seem to follow that any process, proceeding, or device Avhich has for its object the Avresting from the Avorkmen and material-men of their equitable hold upon the amount due under the contract, being the result of and produced by their labor and material, would be directly against the spirit of the law, if not against the very letter itself. All proceedings by attachment, or otheiwise, to subject or incumber the contractor’s interest in the contract, are to save and be subject to the claims of the workmen and material-men, and it is difficult to perceive why the allowance of a set-off against the contractor acquired by the OAvner, after the labor is performed or the material is furnished, would not work the same substantial result that Avould be reached by attachment, nor Avhy it would not divert the security afforded *426 by the contract from those whom the statute contemplate, shall have the benefit of it, and thus accomplish, indirectly, in favor of the owner, that which the statute provides shall not be done by any one, directly. Had the defendant’s assignor sought to reach the interest of the contractor in this contract, as against the claim of the plaintiff, by proceedings in attachment, or by any proceeding known to the law, the very letter of this statute would have proved an effectual bar. How can it (the company) evade the law by selling the claim to another? Ordinarily the purchaser of an overdue claim stands in no better position than his assignor. The rule admits of many exceptions, especially as to matter of remedy, but to regard the present case as affording a ground of exception would, to our mind, work a clear violation of the spirit of the statute.
It is contended that the defendant’s claim against the contractor was a cross demand in such sort that a statutory set-off existed in his favor. As against the contractor, in a suit upon the contract, the set-off’ might be effective, but the equities of the mechanic under this statute introduce another element into the case. The doctrine of set-off is of equitable origin, is a graft from equity upon the law, and, though incorporated into our statute, is to be administered in accordance with the principles of equity, and is not to be extended beyond the words of the statute in cases where, under the rules of equity, it should not be held to apply. Our statute, which provides that where cross demands have existed between persous under such circumstances, as that if one had brought an action against the other, the set-off could have been set up, neither can bo deprived of the benefit thereof by assignment, but the two demands shall be deemed compensated, applies to a case where, an action being brought by one upon a claim obtained from another, the party sued seeks to set off’a cross demand against that other. In such ease he can not be deprived of his remedy because of the fact that the action is brought by the assignee rather than the assignor. And a sufficient reason is that, aside from the consideration of avoiding circuity of *427 action and multiplicity of suits, it would be inequitable to allow one to deprive another of his right of set-off by an assignment of the claim to a third person in. favor of whom no equity of any kind exists. His claim is based wholly upon the consideration moving in favor of the assignor; the assignee stands in his shoes, and hence he can not have any advantage which the assignor might not have had in a suit brought by himself. But we have not that case here. The workman or material-man stands in the contractor’s shoes only as regards the contract itself and payments upon it, and not as regards matters or claims extrinsic of the contract. The consideration which supports his claim is his labor or material upon the structure wherein the owner himself has an interest and of which he gets the benefit. There is, therefore, a consideration moving directly in favor of the workman or material-man, and it would be grossly inequitable for the doctrine of set-off to be interposed to prevent him from receiving the benefits of the statute, and thus to enable the owner to take one man’s property to pay another man’s debt.
It is further contended that the set-off of the' defendant should be treated as a payment upon the contract; that it is the balance due from the owner to the contractor which the workman or material-man may stop the payment of, the language of the statute being “ not exceeding in any case the balance due to the principal contractor,” and that this balance due can not be ascertained until the cross demand is deducted from the contract price. This claim is not tenable. Taking the whole statute together it is reasonable to construe this phrase as applying only to the moneys due by the owner to the contractor under the contract. This follows because the rights of the workman and material-man as against the owner are controlled by the contract and are in strict subordination to its terms, and to construe the language quoted as implying balance due on general account would be to engraft upon the contract other and inconsistent terms, the effect of which would be to incumber the contractor’s interest in the contract; it *428 would be to supplant the ^implication that the consideration was to be paid in money by a provision that it could be paid or satisfied in some other way. We have already said upon the general subject of set-off and cross demands all that seems necessary. Keeping in mind that it is the subsequent payments which the statute gives the workman and material-man a right to have kept back, upon what principle can the set-off be treated as payment ? A payment is said to be a mode of extinguishing obligations. Not only that, but where the contract calls for money, ordinarily it is money which must be paid unless the creditor agrees to accept something else as its equivalent. This act calls for the exercise of the will, of consent, and without consent it can not be regarded as extinguishing the obligation. Without reference to the peculiar wording of section 3204 of the statute,- wherein payment is treated of, the conclusion that this set-off could not perform the office of a payment seems irresistible. But a reference to that section may not be unprofitable. It provides that if by collusion or fraud the owner pay in advance of the payments due under the contract, and diminish the amount of the funds, he shall be liable in the same manner as if no such payment had been made ; but any such payment made in good faith to complete the work according to the original contract shall not be held as fraudulent or collusive. It -would seem not unreasonable to claim from the language of this section that, as to advance payments, the owner may not make them simply to accommodate the contractor, or even to accommodate himself, but that the advance payment allowed and described as not fraudulent or collusive, being oue made in good faith in order to complete the contract, a payment made in advance for any other purpose would not avail the owner as against the workman or material-map, but as to them would be held to be fraudulent and collusive. A construction of this section is not necessary to a determination of the case at bar, but it is suggested that the significant language therein throws much light upon the purpose and object of the *429 whole statute, and re-enforces the conclusions we have drawn from the other sections.
Again it is contended that the term set-off as used in section 3202 refers to set-off as against the contractor in the hands of the owner ; as though there is some magic in the word “ set-off,” in the connection in which it is used, which shows that the claim of the workman and material-man is subject to every set-off. "We do not so construe it. To expect those parties, before filing a claim, to inquire into and ascertain whether a set-off exists in favor of the owner against the contractor, and incorporate that into their claim, is manifestly unreasonable.
Nor is the claim of hardship as regards the owner apparent. It was no more unreasonable to require him, before purchasing a claim against the contractor, to learn whether the workman, whom he knew had performed labor on his house, had been paid, than to ask that workman to anticipate the possibility of the purchase of a claim against the contractor, and give earlier notice. He may have had good reason to rely upon the contractor ki the¡full belief that if the money should be paid by the owner that same money would forthwith pass to him. At all events he had the right to rely upon the contract and the law.
"We do not deem it necessary to undertake a review of the many decisions of the courts of the several states cited by counsel. They have all been examined, as well as many others, and it is believed that, while there is not uniformity in the holdings, owing, in a measure at least, to variance in the terms of the statutes, the general drift will be found in the direction of the conclusions we have reached in construing the statutes of our own state. Nor is it necessary to review the two cases in Ohio referred to. Copeland v. Manton, 22 Ohio St. 398, an instructive case, was based upon dissimilar facts, and the question here presented was not before the court. Besides, very marked changes haveheen made in the statute since the facts of that case arose. The same may be said as to Dun v. Rankin, 27 Ohio St. 132, *430 where tbe opinion was delivered by the learned judge wbo pronounced the opinion in the earlier case.

Judgment of district court reversed and that of common fleas'affirmed.